**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| IOT INNOVATIONS LLC, | |
| Plaintiff, | Civil Action No. 2:26-cv-00334 |
| v. | **JURY TRIAL DEMANDED** |
| SCHNEIDER ELECTRIC USA, INC., | |
| Defendant. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff IoT Innovations LLC ("IoT Innovations" or "Plaintiff") files this Complaint against Schneider Electric USA, Inc. ("Schneider" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.      This is a patent infringement action to stop Schneider's infringement of the following United States Patents (the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"), copies of which are available, respectively, at the links below:

| | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| A. | 7,209,876 | System and Method for Automated Answering of Natural Language Questions and Queries | USPTO.ɢᴏᴠ, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7209876 |
| B. | 7,280,830 | Automatic Registration Services Provided Through A Home Relationship Established Between A Device And A Local Area Network | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7280830. |

| | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| C. | 7,593,428 | Apparatus, and Associated Method for Forming, and Operating Upon, Multiple-Checksum-Protected Data Packet | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7593428 |
| D. | 8,972,576 | Establishing A Home Relationship Between a Wireless Device and a Server in A Wireless Network | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8972576 |
| E. | 9,008,055 | Automatic Remove Services Provided by a Home Relationship Between a Device and a Server | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/9008055 |
| F. | RE44,742 | Dynamic Message Templates And Messaging Macros | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/RE44742 |

2.    IoT Innovations seeks injunctive relief and monetary damages.

## PARTIES

3.    IoT Innovations is a limited liability company formed under the laws of Texas with a registered office address located in Austin, Texas (Travis County).

4.    Based upon public information, Schneider is a company formed under the laws of Delaware since June 7, 1989.

5.    Based upon public information, Schneider has its principal office at 70 Mechanic Street, Foxboro, Massachusetts 02035.

6.    Based upon public information, Schneider is registered to do business in the State of Texas.

7.    Based upon public information, Schneider may be served through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, located at 211 East 7th Street, Suite 620, Austin, Texas 78701.

## JURISDICTION AND VENUE

8.    IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

9.    This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

10.    Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b) and 1391(c) because it has maintained established and regular places of business in this District and has committed acts of patent infringement in the District.  *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

11.    Defendant offers products and services, including through the use and/or testing of the Accused Products, and conducts business in this District.

12.    Defendant is subject to this Court's specific and general personal jurisdiction under due process and/or the Texas Long Arm Statute due at least to Defendant's substantial business in this judicial District, including:  (i) At least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District.

13.    Specifically, Defendant intends to do and does business in, has committed acts of infringement in, and continues to commit acts of infringement in this District directly, through intermediaries, by contributing to and through inducement of third parties, and offers its products or services, including those accused of infringement here, to customers and potential customers located in Texas, including in this District.

14.    Upon information and belief, Defendant owns, operates, manages, conducts business, and directs and controls the operations and employees of facilities at several locations in this

District, including, but not limited to facilities at the following addresses: 911 W Loop 281, Longview, Texas 75604, and 1651 Enterprise Street, Athens, Texas 75751.

15.     Defendant uses these offices and warehouses to sell and distribute its products including the Accused Products as described below.

16.     Defendant commits acts of infringement from this District, including, but not limited to, importing, selling, offering, selling, offering for sale, importing, using, installing, and/or testing of the Accused Products, and inducement of third parties to use the Accused Products in an infringing manner.

## THE ACCUSED PRODUCTS

17.     IoT Innovations repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

18.     Based upon public information, Defendant owns, operates, and/or controls the website and domain http://se.com, through which it advertises, sells, offers to sell, provides and/or educates customers about their products and services.

19.     Defendant makes, uses, causes to be used, sells, offers for sale, provides, supplies, and/or distributes its cloud-based platform solutions (including the Schneider Electric EcoStruxure Resource Advisor Copilot); its smart home ecosystem solutions (including the Wiser Home, Wiser Hub, and connected devices such as Wiser Temperature/Humidity Sensor); its EcoStruxure Panel Server solutions (including the universal wireless, concentrator modbus gateway 110–277 VAC/DC); its EcoStruxure IT system solution (including the EcoStruxure IT mobile application, EcoStruxure IT Gateway, and the cloud-based Data Center Infrastructure Management (DCIM) platform); its EcoStruxure building operation software solutions (including EcoStruxure Building Operation software or EcoStruxure Power Operation software) and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations,

releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions (collectively, the "Accused Products"). *See* **Exhibits A-F** (Evidence of Use Charts Regarding Infringement of the Asserted Patents).

20.    Defendant also instructs its customers, agents, employees, and affiliates regarding how to use the Accused Products.

21.    For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,209,876

22.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

23.    The USPTO duly issued U.S. Patent No. 7,209,876 (hereinafter, the "'876 patent") on April 24, 2007, after full and fair examination of Application No. 10/293,743, which was filed on November 13, 2002. *See* '876 patent at p. 1.

24.    IoT Innovations owns all substantial rights, interest, and title in and to the '876 patent, including the sole and exclusive right to prosecute this action and enforce the '876 patent against infringers and to collect damages for all relevant times.

25.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '876 patent.

26.    The claims of the '876 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of image management in a

mobile network.

27. The written description of the '876 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

28. Defendant has directly infringed the claims of the '876 patent by using, providing, supplying, or distributing the Accused Products. As just one example, Defendant has directly infringed and continues to infringe, either literally or under the doctrine of equivalents, claim 1 of the '876 patent, as detailed in the Evidence of Use attached as Exhibit A. As shown in Exhibit A, Defendant, through the use and provision of the Accused Products, performs a method for producing answers to a question or query issued to an information repository containing natural language data, executable in a computer system, comprising the steps of: a. receiving a search question or query containing at least one variable expression, said at least one variable expression being representative of desired answer data that is to be searched for in said information repository; b. initiating a search of said information repository for information containing terms present in said search question or query and receiving a first data set comprising information containing terms present in said search question or query; c. searching said first data set for answer phrases present in syntactically similar form to said search question or query and containing answer data which may replace said variable expression to provide an answer to said search question or query, and retrieving answer phrases resulting from such search; and d. modifying said answer phrases and providing output derived from said answer phrases in the form of one or more direct answers to said search question or query.

29.     IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,280,830

30.     Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

31.     The USPTO duly issued U.S. Patent No. 7,280,830 (hereinafter, the "'830 patent") on October 9, 2007 after full and fair examination of Application No. 10/859,735 which was filed on June 2, 2004.  *See* '830 patent at p. 1.

32.     IoT Innovations owns all substantial rights, interest, and title in and to the '830 patent, including the sole and exclusive right to prosecute this action and enforce the '830 patent against infringers and to collect damages for all relevant times.

33.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '830 patent.

34.     The claims of the '830 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of automatic registration of a new device through the establishment of a home relationship with a network server.

35.     The written description of the '830 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and

improved upon what may have been considered conventional or generic in the art at the time of the invention.

36.     Defendant has directly infringed the claims of the '830 patent by using, providing, supplying, or distributing the Accused Products.  As just one example, Defendant has directly infringed and continues to infringe, either literally or under the doctrine of equivalents, claim 1 of the '830 patent, as detailed in the Evidence of Use attached as Exhibit B. As shown in Exhibit B, Defendant, using the Accused Products and their associated hardware and software and functionalities, performs a method for automatic registration of a new wireless device with a registration server, comprising: establishing a home relationship between the new wireless device and a network server, such that no additional configuration is required by a user of the new device to communicate over a network once the relationship is established, wherein establishing a home relationship includes, determining at the network server, that the wireless device is an owned device, wherein the owned device is previously known to the network server; automatically obtaining registration information for the new device; establishing a connection between a registration server and the network server; and sending the registration information from the network server to the registration server.

37.     IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,593,428

38.     IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

39.     The USPTO duly issued U.S. Patent No. 7,593,428 (hereinafter, the "'428 patent") on September 22, 2009, after full and fair examination of Application No. 11/621,545 which was filed on January 9, 2007.  *See* '428 patent at p. 1.

40.     IoT Innovations owns all substantial rights, interest, and title in and to the '428 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

41.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '428 patent.

42.     The claims of the '428 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function, operation, and security of data communications by selectively providing extended checksum protection to data packets communicated between communication stations, enabling more reliable and secure transmission of data across networks.

43.     The written description of the '428 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

44.     Defendant has directly infringed the claims of the '428 patent by using, providing, supplying, or distributing the Accused Products.  As just one example, Defendant has directly infringed and continues to infringe, either literally or under the doctrine of equivalents, claim 14

of the '428 patent, as detailed in the Evidence of Use attached as <u>Exhibit C</u>.  As shown in <u>Exhibit C</u> Defendant, using the Accused Products and their associated hardware and software and functionalities, performs a method comprising: receiving data from a data source at a transceiver station; and in response to programmed instructions in processing circuitry at the transceiver station; selecting a first portion of the data to be protected by a first checksum and selecting a second portion of the data to be protected by a second checksum; performing a first checksum calculation upon the selected first portion and performing at least a second checksum calculation upon the selected second portion; and formatting the data into a packet-formatted data packet, wherein the packet-formatted data packet comprises the selected first portion, indicia associated with the first checksum calculation, the selected second portion, and indicia associated with the second checksum calculation.

45.    IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 8,972,576

46.    IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

47.    The USPTO duly issued U.S. Patent No. 8,972,576 (hereinafter, the "'576 patent") on March 3, 2015 after full and fair examination of Application No. 10/833,381 which was filed on April 28, 2004.  *See* '576 patent at p. 1.

48.    IoT Innovations owns all substantial rights, interest, and title in and to the '576 patent, including the sole and exclusive right to prosecute this action and enforce said patent against

infringers and to collect damages for all relevant times.

49.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '576 patent.

50.     The written description of the '576 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

51.     The claims of the '576 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components and functionalities that improve upon the function, operation, and security of communications devices and networks by employing an improved network protocol that enables the establishment of a known, persistent relationship between a mobile wireless device and a wireless network that allows the device to communicate over the network absent further configuration once the relationship has been established.

52.     Defendant has directly infringed the claims of the '576 patent by using, providing, supplying, or distributing the Accused Products.

53.     As just one example, Defendant has directly infringed and continues to infringe, either literally or under the doctrine of equivalents, claim 1 of the '576 patent, as detailed in the Evidence of Use attached as Exhibit D.  As shown in Exhibit D, the Accused Products and their associated hardware and software and functionalities include a network configuration  comprising a mobile device; and a wireless home network to communicate with the mobile device, the home network

comprising at least one server coupled to at least one access point through a network interface, wherein the server: (a) detects the presence of the mobile device; (b) in response to determining that the mobile device is unrecognized, automatically notifies a network administrator and requests authorization from the network administrator to establish a relationship between the network and the mobile device; (c) in response to receiving the authorization from the network administrator to establish the relationship, requests authorization from a mobile device to establish the relationship; and (d) establishes the relationship between the mobile device and the network in response to receiving the authorization from the mobile device, such that no additional configuration is required by the mobile device to communicate over the network once the relationship has been established.

54.    IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT V: INFRINGEMENT OF U.S. PATENT NO. 9,008,055**

55.    IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

56.    The USPTO duly issued U.S. Patent No. 9,008,055 (hereinafter, the "'055 patent") on April 14, 2015 after full and fair examination of Application No. 10/903,931 which was filed on July 29, 2004.  *See* '055 patent at p. 1.

57.    IoT Innovations owns all substantial rights, interest, and title in and to the '055 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

58.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '055 patent.

59.     The written description of the '055 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

60.     The claims of the '055 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components and functionalities that improve upon the function, operation, and security of communications devices and networks by employing an improved network protocol that enables the establishment of a known, persistent relationship between a mobile wireless device and a wireless network that allows the device to communicate over the network absent further configuration once the relationship has been established.

61.     Defendant has directly infringed the claims of the '055 patent by using, providing, supplying, or distributing the Accused Products.

62.     As just one example, Defendant has directly infringed and continues to infringe, either literally or under the doctrine of equivalents, claim 1 of the '055 patent, as detailed in the Evidence of Use attached as Exhibit E.  As shown in Exhibit E, the Accused Products and their associated hardware and software and functionalities include a network configuration  comprising a mobile device; and a wireless home network to communicate with the mobile device, the home network comprising at least one server coupled to at least one access point through a network interface,

wherein the server: (a) detects the presence of the mobile device; (b) in response to determining that the mobile device is unrecognized, automatically notifies a network administrator and requests authorization from the network administrator to establish a relationship between the network and the mobile device; (c) in response to receiving the authorization from the network administrator to establish the relationship, requests authorization from a mobile device to establish the relationship; and (d) establishes the relationship between the mobile device and the network in response to receiving the authorization from the mobile device, such that no additional configuration is required by the mobile device to communicate over the network once the relationship has been established.

63.    IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

64.    IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IoT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of the '055 patent.  Defendant's actions have interfered with and will interfere with IoT Innovations' ability to license technology.  The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology.  The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

65.    Defendant had knowledge of the '055 patent at least as of the date when it was notified of the filing of this action.

66.    Upon information and belief, Defendant has also indirectly infringed one or more

claims of the '055 patent by inducing others to directly infringe said claims.

67.     Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '055 patent by providing or requiring use of the Accused Products.

68.     Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '055 patent, including, for example, claim 1 of the '055 patent.

69.     Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customers on how to use the Accused Products in an infringing manner.

70.     Defendant is performing these steps, which constitute induced infringement with the knowledge of the '055 patent and with the knowledge that the induced acts constitute infringement.

71.     Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '055 patent.

72.     Defendant's inducement is ongoing.

73.     Upon information and belief, Defendant has also indirectly infringed by contributing to the infringement of the '055 patent.

74.     Defendant has contributed to the direct infringement of the '055 patent by their personnel, contractors, and customers.

75.     The Accused Products have special features that are specially designed to be used in

an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '055 patent, including, for example, claim 1 of the '055 patent. The special features constitute a material part of the invention of one or more of the claims of the '055 patent and are not staple articles of commerce suitable for substantial non-infringing use. In fact, as shown in Exhibit E, the primary purpose of the Accused Products is to act and operate in a way that infringes the '055 patent.

76. Defendant's contributory infringement is ongoing.

77. Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

78. Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

79. Defendant's direct infringement of one or more claims of the '055 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

### COUNT VI: INFRINGEMENT OF U.S. PATENT NO. RE44,742

80. Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

81. The USPTO duly issued U.S. Patent No. RE44,742 (hereinafter, the "'742 patent") on February 4, 2014 after full and fair examination of Application No. 13/542,351 which was filed on July 5, 2012. *See* '742 patent at 1. The '742 patent is a reissue of U.S. Patent No. 7,751,533. *See id.* at 12.

82. IoT Innovations owns all substantial rights, interest, and title in and to the '742 patent,

including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

83. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '742 patent.

84. The written description of the '742 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

85. The claims of the '742 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting template-based messaging systems.

86. Defendant has directly infringed the claims of the '742 patent by using, providing, supplying, or distributing the Accused Products.

87. As just one example, Defendant has directly infringed and continues to infringe, either literally or under the doctrine of equivalents, claim 1 of the '742 patent, as detailed in the Evidence of Use attached as Exhibit F. As shown in Exhibit F Defendant, using the Accused Products and their associated hardware and software and functionalities, performs a method comprising determining, by a processing device, a message to be generated from a message template; automatically populating, by the processing device, a dynamic field of the message template with message context data in response to the determination; and sending, by the processing device, the

message having the message context data in the dynamic field of the message template to a remote device.

88.     IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

89.     IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IoT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of the '742 patent.  Defendant's actions have interfered with and will interfere with IoT Innovations' ability to license technology.  The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology.  The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

90.     Defendant had knowledge of the '742 patent at least as of the date when it was notified of the filing of this action.

91.     Upon information and belief, Defendant has also indirectly infringed one or more claims of the '742 patent by inducing others to directly infringe said claims.

92.     Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '742 patent by providing or requiring use of the Accused Products.

93.     Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '742 patent, including, for example, claim 1 of the '742 patent.

94.     Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customers on how to use the Accused Products in an infringing manner.

95.     Defendant is performing these steps, which constitute induced infringement with the knowledge of the '742 patent and with the knowledge that the induced acts constitute infringement.

96.     Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '742 patent.

97.     Defendant's inducement is ongoing.

98.     Upon information and belief, Defendant has also indirectly infringed by contributing to the infringement of the '742 patent.

99.     Defendant has contributed to the direct infringement of the '742 patent by their personnel, contractors, and customers.

100.     The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '742 patent, including, for example, claim 1 of the '742 patent.  The special features constitute a material part of the invention of one or more of the claims of the '742 patent and are not staple articles of commerce suitable for substantial non-infringing use.  In fact, as shown in Exhibit F, the primary purpose of the Accused Products is to act and operate in a way that infringes the '742 patent.

101.     Defendant's contributory infringement is ongoing.

102.	Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

103.	Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

104.	Defendant's direct infringement of one or more claims of the '742 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

## JURY DEMAND

105.	IoT Innovations hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

106.	IoT Innovations requests that the Court find in its favor and against Defendant, and that the Court grant IoT Innovations the following relief:

a.	Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

b.	A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '055 and '742 patents; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of said patents by such entities;

c.	Judgment that Defendant accounts for and pays to IoT Innovations all damages to and costs incurred by IoT Innovations because of Defendant's infringing activities and other conduct complained of herein;

d. Judgment that Defendant's infringements be found willful as to the '055 and '742 patents, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e. Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f. That this Court declare this an exceptional case and award IoT Innovations its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g. All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>April 23, 2026</u>

Respectfully submitted,

<u>/s/ C. Matthew Rozier</u>

C. Matthew Rozier (CO 46854)*
**ROZIER HARDT MCDONOUGH PLLC**
1001 Bannock Street, Suite 241
Denver, Colorado 80204
Telephone: (404) 779-5305; (202) 316-1591
Email: matt@rhmtrial.com

Jonathan L. Hardt (TX 24039906)*
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

*Attorneys for Plaintiff IOT INNOVATIONS LLC*

\* admitted to the Eastern District of Texas

**Exhibits**

   A.  Evidence of Use Chart for U.S. Patent No. 7,209,876
   B.  Evidence of Use Chart for U.S. Patent No. 7,280,830
   C.  Evidence of Use Chart for U.S. Patent No. 7,593,428
   D.  Evidence of Use Chart for U.S. Patent No. 8,972,576
   E.  Evidence of Use Chart for U.S. Patent No. 9,008,055
   F.  Evidence of Use Chart for U.S. Patent No. RE44,742

**Attachments**

   • Civil Cover Sheet
   • Proposed Summons